ROBERT E. MURRAY, ET AL. *v.* CITY OF RICHMOND

[No. 870S175.  Filed December 29, 1971.]

*Charles V. Livengood,* of Richmond, for appellants.

*Willard G. Bowen, Bowen, Cecere, O'Maley & Tripp,* of Richmond, for appellee.

GIVAN, J.—The City of Richmond filed a condemnation action against the appellants to acquire certain property belonging to the appellants as part of a redevelopment program following a catastrophic explosion in the City of Richmond on the 6th day of April, 1968. The complaint filed by the city recited that the Richmond Redevelopment Commission was engaged in redevelopment of the area involved, which area had been found by the Commission to be a blighted area as defined in the Redevelopment of Cities and Towns Act 1953 as found in Burns Indiana Statutes, 1963 Replacement and 1971 Supplement, Section 48-8501 *et seq.;* that the public health and welfare would be benefited by the acquisition and development of the area. It was also alleged in order to carry out the redevelopment program it would be necessary to acquire the real estate in question, and that a bona fide effort to purchase the property had been made by the city.

The appellants filed objections to the appellee's complaint, claiming that the City had made no bona fide effort to purchase the real estate prior to the filing of condemnation, and that they failed to negotiate or agree with defendants as to the amount of damages; that the City had failed to establish that it has a right to exercise the power of eminent domain; that the City had failed to state the purpose for which the property was sought to be appropriated, and that the City had not filed the overall plan of the Redevelopment Commission in this cause; that the resolution to acquire the subject real estate was not set out in the complaint; that the area is not in fact a disaster area as claimed by the City; that the corporation hold-

ing the lease on the premises was not named a party; that the public health and welfare would not be benefited by the acquisition. Subsequently, the City moved to strike certain defenses raised in appellants' objections, namely:

"1. That the plaintiff does not have the right to exercise the power of eminent domain because the Redevelopment Commission, upon whose behalf the City of Richmond, Plaintiff is now moving in these proceedings, was established prior to the adoption of a proper master plan and therefore said Commission and all proceedings by said Commission are invalid and illegal; and further the resolution adopted by the Redevelopment Commission declaring the total area in question a blighted area was an improper resolution on the grounds that said area is not in fact a blighted area and further because the buildings in question and real estate in question of the defendants specifically is not a blighted building not withstanding the blighted condition of the area in which the building is located.

"2. That the plaintiff had failed to specify a proper purpose for the condemnation of the defendants' real estate in that the plaintiff should state specifically the particular use to which the property to be condemned is to be put.

"3. That the area in question and the land and building of the defendants is not a blighted area nor is the land and building of the defendants a blighted land nor building.

"4. That proceeding under the Redevelopment Act for the determination of the area in question to be a blighted area is not in the public benefit nor would the public be benefited under said act and under said Redevelopment procedure."

The trial court sustained specifications 1, 3 and 4 of the motion to strike as above set out, and overruled the motion as to specification 2. Hearing was then had on appellants' objections limited to the issues: 1. Whether there was a bona fide effort to purchase the real estate in question, and 2. Whether the appellee failed to state specifically the use to which the real estate was to be put, therefore failing to state a proper purpose for the condemnation.

Following a hearing on the objections the court entered the following finding:

"And the Court finds that there has been a bona fide effort to purchase the defendants real estate sought to be condemned in this cause as required by law; and that said taking is and will be for a public purpose; that the taking of said property is for the elimination of blight and the prevention of return of blighted conditions; that the renewal plan of plaintiff is reasonably in furtherance of said purpose; and the operation under said plan with respect to said defendants' real estate is reasonably in furtherance of said purpose; that said real estate is not to be taken and applied to a private use; that the action of plaintiff in all these particulars has not been arbitrary or capricious; and that therefore said defendants objections to plaintiff's complaint ought to be overruled."

The court entered judgment accordingly. It is from that judgment this appeal is taken.

The evidence presented at the hearing discloses the following facts:

The property in question is owned by appellants Robert and Catherine Murray. It is a two-story brick building. The ground floor is occupied by a tavern operated by Kenny and Bob's, Inc. Robert Murray is president of said corporation. The upper floor was occupied by apartments. On the 6th day of April, 1968, a large explosion occurred in Richmond, Indiana, destroying several buildings in the downtown area. As a result of the explosion the Richmond Redevelopment Commission declared the area to be a blighted area. The building in question suffered glass breakage but no other damage from the explosion. However, the property in question was sought to be acquired as part of the redevelopment plan, as it was the judgment of the Redevelopment Commission that the area occupied by the building was necessary to implement the overall redevelopment of the area.

Appraisals were made on behalf of the Redevelopment Commission by which it was determined that the property was worth $40,000. The Redevelopment Commission made an offer to the appellants to purchase the property for $40,000. The appellants counter-offered in the amount of $500,000. Ap-

pellants were informed by the Commission it would go no higher than $40,000. At a subsequent meeting the appellants through their representative reduced their offer to sell to $100,000. This offer was declined by the Commission. Subsequently, this action in condemnation was filed by the City of Richmond.

This Court has jurisdiction of this appeal under authority of Burns Ind. Stat., 1968 Repl., § 3-1705, which provides for an appeal from the overruling of objections in a condemnation action and under the provisions of Burns Ind. Stat., 1968 Repl., § 4-214, which provides that appeals from condemnation proceedings for the appropriation of lands for public use be taken directly to the Supreme Court of Indiana.

The appellee claims many procedural deficiencies in appellants' brief in support of a motion to dismiss or affirm. Notwithstanding appellee's contentions in this regard this case will be considered on its merits.

Appellants first contend that the trial court erred in finding that there had been a bona fide effort to purchase. It is appellants' position that the appellee failed to negotiate with them concerning the purchase of the real estate. They contend that appellee's arbitrary offer of $40,000 and a refusal to negotiate upward from that figure was a failure to negotiate and thus in violation of Burns Ind. Stat., 1968 Repl., § 48-8556, which reads in pertinent part as follows:

> "Negotiations for the purchase of property may be carried on directly by the commissioners, by their employees, or by expert negotiations. . . ."

We do not agree with appellants' contentions in this regard. We do not construe the language to mean that the condemning authorities must first make an offer of a figure below that which they believe to be the maximum they could justify paying for the property, then through a series of negotiations bargain with the property owner until some figure within what the Commission might consider to be reasonable was agreed

upon. In fact, it appears to be much more honest and forthright on the part of the condemning authority to come forth in their initial offer with the highest price they feel they could reasonably justify paying for the property. The fact that a property owner might place a higher value on his real estate and attempt to induce the condemning authority to pay a higher price does not bind the condemning authority to raise its figure.

We do not interpret the word "negotiations" in the statute to mandate a series of encounters of offers and counter-offers in an attempt to arrive at a price. Where, as here, the condemning authority has employed professional appraisers and has based its firm offer to purchase on figures presented to it by its appraisers, we hold that such an offer to purchase meets the requirement to negotiate as set out in the statute.

In the case at bar the appellee alleged in its complaint that it had attempted to purchase the property as required by the statute. This Court has previously held:

> "The attempt to agree need not be pursued further than to develop the fact that an agreement to purchase is not possible at any price which the condemnor is willing to pay. . . . " *Wampler* v. *Trustees of Ind. University* (1961), 241 Ind. 449, 172 N. E. 2d 67.

We, therefore, hold the trial court did not err in finding that there had been adequate negotiations to purchase the property prior to the filing of the condemnation action.

Appellants also contend that the trial court was without jurisdiction to order the appropriation of the real estate by reason of the failure of negotiation. We hold the trial court did have jurisdiction for the reasons above stated.

Appellants next contend the trial court erred in refusing to hear evidence as to whether or not the area in question was, in fact, blighted. With this we do not agree. In the condemnation action the trial court did not have jurisdiction to

rule on the issue of blight. Burns Indiana Statutes, 1968 Replacement, § 48-8552 provides in part as follows:

> "Whenever, upon investigation, it shall be found by the commissioners that any area or areas in the territory under their jurisdiction has or have become blighted to such an extent that such condition cannot be corrected by regulatory processes, or by the ordinary operations of private enterprise . . .
>
> ". . . the commissioners shall adopt a resolution declaring that said blighted area or areas constitutes a menace to the social and economic interests of the city or town and its inhabitants, and that it will be of public utility and benefit to acquire such area or areas and redevelop the same under the provisions of this act. . . ."

Under the statute, the resolution is then to be submitted to the plan commission of the city or town for its approval or disapproval pursuant to § 48-8553 of the statute. The adoption of the resolution is governed by Burns Ind. Stat., 1968 Repl., § 48-8554, which states in part as follows:

> "Upon receipt of the written order of approval of the plan commission and approval of the city council or the board of town trustees, the redevelopment commissioners shall cause notice of the adoption of the declaratory resolution and purport thereof . . . to be published . . . which notice shall name a date . . . on which the commissioners will receive and hear remonstrances and objections from persons interested in or affected by the proceedings pertaining to the proposed project, and when it will determine the public utility and benefit thereof. . . .
>
> ". . . The final action taken by the commissioners shall be duly recorded, and such action shall be final and conclusive upon all persons whomsoever, except that any person who has remonstrated in writing and who is aggrieved by the decision of the commissioners may . . . take an appeal. . . ."

Section 48-8555 of the statute provides for an appeal to the circuit or superior court from an adverse ruling on a remonstrance.

Under the statute, therefore, the method for appealing the issue as to whether or not the area is blighted is to file a

remonstrance and appeal from an adverse ruling thereon. This Court has previously held that having foregone the statutory method of appeal, the condemnee may not collaterally attack the finding that the area is a blighted area in a condemnation proceeding. *Suttmiller et al.* v. *City of Batesville, etc.* (1967), 248 Ind. 391, 226 N. E. 2d 893, 10 Ind. Dec. 521. We, therefore, hold the trial court did not err in excluding the issue as to whether or not the area was blighted.

Appellants also contend the trial court erred in holding the purchase of appellants' property was reasonably in furtherance of a public purpose. Appellants take the position that inasmuch as the building was not substantially harmed by the explosion the condemnor was not in fact acquiring the land for a public use and benefit. With this we do not agree. This Court stated in *Alanel Corp., etc.* v. *Indianapolis Redevelopment Commission* (1958), 239 Ind. 35, 46, 154 N. E. 2d 515:

"Even though the property here involved may not itself be 'blighted,' yet it may be subject to condemnation under the Act because it is located in a 'blighted area,' and its taking is necessary to clear the area."

The Court further stated at page 47:

"It seems logically to follow that if the taking of property for slum clearance constitutes a public use or purpose, the taking of property to eliminate a blighted area as it is defined in the Act would also constitute a public use or purpose. If the power of eminent domain can be exercised in the case of slum clearance, it follows that it likewise can be exercised in the elimination and redevelopment of blighted areas."

We, therefore, hold that the structural condition of appellants' building is not a determining factor in the overall decision of the commission to declare the area a blighted area and to condemn the building in order to facilitate its overall plan. The trial court did not err in finding that the property was being taken for a public purpose in furtherance of a redevlopment plan.

We find no reversible error in his record. The trial court is, therefore, affirmed.

Arterburn, C. J., and DeBruler, Hunter and Prentice, JJ., concur.

NOTE.—Reported in 276 N. E. 2d 519.